Anne DAILEY, Plaintiff,

v.

SOCIETE GENERALE, Defendant.

No. 94 Civ. 1649 (JGK).

United States District Court,
S.D. New York.

Feb. 14, 1996.

Laura S. Schnell, Margaret L. Watson, Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for Plaintiff.

Michael Kalish, Winthrop, Stimson, Putnam & Roberts, New York City, for Defendant.

## OPINION AND ORDER

KOELTL, District Judge.

There are three motions before the Court: (1) the defendant's motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) setting aside the plaintiff's back pay damage award and for a new trial pursuant to Fed. R.Civ.P. 59(a) on the plaintiff's retaliation claim or, in the alternative, for a new trial solely on the plaintiff's back pay and emotional distress damage awards; (2) the defendant's motion for attorneys' fees and costs; and (3) the plaintiff's application for attorneys' fees and costs.

These motions were made after entry of judgment following a five-day jury trial in an action by the plaintiff Anne Dailey against her former employer Societe Generale ("the Bank"). *See Dailey v. Societe Generale*, 889 F.Supp. 108 (S.D.N.Y.1995). The plaintiff alleged that the Bank had violated Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, Executive Law § 296 *et seq.* ("Human Rights Law"), and the Administrative Code of the City of New York § 8–101 *et seq.* ("Administrative Code") by (1) discriminating against her on the basis of her gender by paying her less than male employees in substantially similar jobs and (2) willfully retaliating against her after she complained to people at the Bank. Dailey sought compensatory and punitive damages as well as declaratory and injunctive relief. The jury rendered a special verdict in favor of the plaintiff on her retaliation claim but in favor of the Bank on her discrimination claim. The jury awarded the plaintiff $300,000 in back pay compensation, which covered the full period between the time the plaintiff left her employment at the Bank and the trial, and $100,000 in emotional distress damages. The parties have entered into a stipulation reducing the plaintiff's damages for emotional distress to $17,-500 and withdrawing the defendant's motion for new trial with respect to the plaintiff's emotional distress damages.

For the reasons explained below, the defendant's motions for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b), for a new trial pursuant to Fed.R.Civ.P. 59(a), and

for attorneys' fees and costs are denied, and the plaintiff's application for attorneys' fees and costs is granted in part.

## I.

The defendant contends that it is entitled to judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) setting aside the plaintiff's back pay award because the plaintiff allegedly failed to mitigate her damages. The defendant argues that the plaintiff is not entitled to any recovery of back pay for the period after August 1, 1993, which is when she abandoned her job search and enrolled in school as a full-time student. In addition, the defendant argues that it is entitled to a new trial on the plaintiff's retaliation claim in its entirety, or, in the alternative, a new trial on the issue of the plaintiff's back pay damages.

## A.

 A jury verdict is not to be set aside and judgment entered as a matter of law pursuant to Fed.R.Civ.P. 50(b) unless " 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [jurors] could have reached.' " *Samuels v. Air Transport Local 504*, 992 F.2d 12, 14 (2d Cir.1993) (quoting *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir.1970)). In considering a Rule 50(b) motion, a trial court "must view the evidence in a light most favorable to the nonmovant and grant that party every reasonable inference that the jury might have drawn in its favor." *Samuels*, 992 F.2d at 16. Judgment as a matter of law following a jury verdict is to be entered only when "there is 'such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or [where there is] such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [the movant].' " *Logan v. Bennington College Corp.*, 72 F.3d 1017, 1021 (2d Cir.1995) (quoting *Concerned Area Residents for the Env't. v. Southview Farm*, 34 F.3d 114, 117 (2d

Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1793, 131 L.Ed.2d 721 (1995) (internal quotations and citations omitted)).

 Dailey, as a prevailing Title VII plaintiff, was required to mitigate her damages by being reasonably diligent in finding other suitable employment substantially equivalent to her job at the Bank. *See Ford Motor Co. v. EEOC*, 458 U.S. 219, 231–32, 102 S.Ct. 3057, 3065–66, 73 L.Ed.2d 721 (1982); *Clarke v. Frank*, 960 F.2d 1146, 1152 (2d Cir.1992). The defendant bears the burden of proving that the plaintiff has not fulfilled her duty to mitigate. *Clarke*, 960 F.2d at 1152; *EEOC v. Kallir, Philips, Ross, Inc.*, 420 F.Supp. 919, 925 (S.D.N.Y.), *aff'd.*, 559 F.2d 1203 (2d Cir.1976), *cert. denied*, 434 U.S. 920, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977). As Judge Weinfeld explained in a decision the Second Circuit Court of Appeals affirmed, the defendant's burden is very high.

> [The] defendant's burden of proving a lack of diligence is not satisfied merely by a showing that there were further actions that plaintiff could have taken in pursuit of employment. Rather, defendant must show that the course of conduct plaintiff actually followed was so deficient so as to constitute an unreasonable failure to seek employment. The range of reasonable conduct is broad and the injured plaintiff must be given the benefit of every doubt in assessing her conduct.

*Kallir, Philips, Ross, Inc.*, 420 F.Supp. at 925.

At trial, the plaintiff testified that following her departure from the Bank, she searched for comparable employment in the banking industry for about six months. The plaintiff testified that she used the outplacement services of Lee Hecht Harrison until the defendant cut her off from those services; that she contacted individuals in the banking industry to obtain leads on banking positions comparable to hers at Societe Generale; that she contacted executive recruiters; that she made many contacts through phone calls and luncheons; and that she progressed through the final rounds of interviews for two comparable jobs but was not offered either. After six months of pursuing comparable employment without receiving a single job offer, and

without funds to continue living in New York City, the plaintiff enrolled as a full-time student in a physician's assistant program in Pennsylvania, where she continued to be enrolled to the date of the trial.

 As the defendant concedes, enrollment in school on a full-time basis does not, as a matter of law, constitute a failure to mitigate. *See* Def.'s Mem. of Law in Supp. of its Mot. for J. as a Matter of Law Pursuant to Fed.R.Civ.P. 50(b) and a New Trial Pursuant to Fed.R.Civ.P. 59(a) at 12–13. When a claimant attends school during the back pay period, "the central question is whether an individual's furtherance of his education is inconsistent with his responsibility 'to use reasonable diligence in finding other suitable employment.'" *EEOC v. Local 638*, 674 F.Supp. 91, 104 (S.D.N.Y.1987) (quoting *Ford Motor Co.*, 458 U.S. at 231, 102 S.Ct. at 3065). As the jury instructions in this case stated, although an individual who opts to attend school and abandons her willingness to search for and return to work generally does not satisfy her duty to mitigate, "one who chooses to attend school only when diligent efforts to find work prove fruitless, or who continues to search for work even while enrolled in school, does meet the duty." *Id.*

 The plaintiff presented ample evidence at trial to demonstrate that her decision to enter school was in accord with her duty to mitigate. The defendant introduced no evidence to contradict the plaintiff's testimony that she spent the first six months after she left her job at Societe Generale trying to find a comparable position in the banking industry, nor any evidence that the plaintiff received and rejected an offer of employment in the banking industry or any other comparable employment. The plaintiff testified that she decided to enroll in school only after she ran out of money and was unable to support herself, and that she decided to attend school to become a physician's assistant in order to improve her employment opportunities. Thus, the plaintiff chose to pursue this career option because she

could not get a job in New York despite her diligent efforts, and without a job she could not continue to live in New York. A plaintiff does not have to endure extreme hardship to meet her mitigation obligations; rather, the obligation is one of "reasonable diligence." *Ford Motor Co.*, 458 U.S. at 231, 102 S.Ct. at 3065. The plaintiff presented ample evidence from which the jury could conclude that she had exercised reasonable diligence.

The defendant's argument that the plaintiff would receive a "double benefit" if she received a back pay award for the period she was enrolled in school is groundless. As other courts have held, a plaintiff does not reap a "double benefit" by returning to school when it is the best alternative the plaintiff has. *See, e.g., Hanna v. American Motors Corp.*, 724 F.2d 1300, 1308–10 (7th Cir.), *cert. denied*, 467 U.S. 1241, 104 S.Ct. 3512, 82 L.Ed.2d 821 (1984); *Local 638*, 674 F.Supp. at 104 (finding that the plaintiffs who returned to school "did so as a means not to abandon the job market but, on the contrary, to acquire marketable skills and thus to enter a labor pool").

On the basis of the evidence presented at trial, and drawing all reasonable inferences in favor of the plaintiff, the jury was justified in finding that the defendant failed to meet its burden of demonstrating that the plaintiff's enrollment in school six months after diligently searching for employment in the banking industry constituted a failure to mitigate. *See Hanna*, 724 F.2d at 1306–10. Accordingly, the plaintiff is entitled to the $300,000 in back pay compensation awarded by the jury.

## B.

The defendant also moves for a new trial pursuant to Fed.R.Civ.P. 59 with respect to the plaintiff's retaliation claim or, in the alternative, with respect only to the plaintiff's back pay damage award.[1] For the following reasons, the defendant's motion for a new trial is denied.

---

**1.** The defendant's motion for a new trial on the plaintiff's emotional distress damage award has

been resolved by stipulation.

A motion for a new trial pursuant to Fed.R.Civ.P. 59 may not be granted on the basis of the weight of the evidence unless the jury's verdict is "seriously erroneous." *Binder v. Long Island Lighting Co.*, 57 F.3d 193, 202 (2d Cir.1995). A trial court may refrain from setting aside a verdict and ordering a new trial "[w]here the resolution of the issues depended on assessment of the credibility of the witnesses." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992), *cert. denied*, 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993). Here, the defendant alleges that it is entitled to a new trial on the plaintiff's retaliation claim, or at least on the plaintiff's damage award.

**1.**

The defendant contends that the jury's verdict in favor of the plaintiff on the retaliation claim is "seriously erroneous" because the plaintiff's case rested entirely on her own testimony that was allegedly riddled with misstatements and misrepresentations. The defendant's argument is without merit.

The evidence that the plaintiff presented at trial is discussed at length in the Court's prior decision in this case and will not be repeated here. *See Dailey v. Societe Generale*, 889 F.Supp. at 109–111. There, the Court explained that with respect to the plaintiff's retaliation claim, the plaintiff and the defendant "presented competing versions of events to the jury," making credibility a crucial issue for the plaintiff's retaliation claim. *Id.* at 110. To support her retaliation claim, the plaintiff claimed that she had complained to people in senior positions at the Bank and that she perceived a gender-based disparity in compensation for substantially similar work. In particular, Dailey testified that after she received a poor performance evaluation, she met with Kevin Hughes, the Manager of Human Resources, on two separate occasions to discuss her complaints concerning gender discrimination. Dailey testified that Hughes offered her a severance package in exchange for releasing the Bank from all legal liability, and later told her that if she did not accept this offer, he would pull her out of outplacement and "cut her off at the knees."

The jury had an ample basis to conclude that Hughes was not credible when he denied that the plaintiff was terminated because of her complaints about gender discrimination. For example, Hughes was not credible when he testified that the plaintiff was not complaining about 'gender discrimination when she complained about the disparity between her salary and the salaries certain men were earning at the Bank. Similarly, Hughes' testimony that he may have said that he would cut off the plaintiff's salary but not that he would "cut her off at the knees" could be viewed as self-serving and not candid.

Although the Bank points to various prior statements that it maintains demonstrate the unreliability of the plaintiff's testimony, the jury was properly instructed on how to assess those prior statements. In addition, the circumstances surrounding the conversations between the plaintiff and Hughes support the plaintiff's version that she did not voluntarily resign from the Bank but that she was fired because of her complaints about gender discrimination. Hughes set the date for the plaintiff's termination from the Bank, which was soon after her complaints about disparate pay. The plaintiff submitted no resignation letter, and it would be unreasonable to believe that the plaintiff—who had been employed by the Bank for many years—would leave her position voluntarily without another position available to her.

The jury could well have disbelieved Hughes's denial that the plaintiff's termination was retaliatory, and the jury's conclusion of retaliation was supported by independent evidence of the circumstances surrounding the termination. The jury's conclusion was not seriously erroneous.

**2.**

The defendant also argues that it is entitled to a new trial because the Court improperly admitted irrelevant and unduly prejudicial evidence. In particular, the defendant argues that the Court improperly admitted into evidence a letter dated October 25, 1993 signed by Governor Tipton, the defendant's General Counsel, which was submitted to the New York State Division of Human Rights in response to the plaintiff's administrative

**1324**

charge (the "Tipton letter"). The defendant also contends that the Court improperly admitted evidence relating to the compensation of other employees at Societe Generale. Both of these arguments are without merit.

In the Tipton letter, the defendant's General Counsel stated that "the termination of Ms. Dailey's employment was for cause ..." and that "the bank terminated her employment." At trial the defendant objected to the introduction of this letter into evidence on the basis that the manner in which the defendant's General Counsel characterized certain facts was both irrelevant and immaterial, and that even if the evidence was relevant, its probative value was outweighed by its unfairly prejudicial effect. The defendant also objects that the plaintiff improperly used the Tipton letter as evidence of a pretext for retaliation even though, the defendant argues, the letter is actually consistent with the defendant's claims that it was the plaintiff who initiated the separation.

■ As a statement made on behalf of Societe Generale by its general counsel, the Tipton letter was plainly not hearsay pursuant to Fed.R.Evid. 801(d)(2)(C)–(D), which provides that party admissions are not hearsay. Accordingly, the only issues are whether this evidence was relevant and whether the Court should have excluded the letter under Fed.R.Evid. 403 on the ground that "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

■ The letter was plainly relevant to determining the merits of the plaintiff's retaliation claim because it discussed the Bank's explanation for the circumstances under which the plaintiff left the Bank. This letter was also not unfairly prejudicial. The Bank argues that the Tipton letter was consistent with its version at trial of how and why the plaintiff left the Bank. If so, then the letter could hardly be prejudicial. The jury was entitled to consider the evidence and determine whether the Bank was giving inconsistent explanations and whether either was a truthful explanation of the circumstances un-

der which the plaintiff left the Bank. Moreover, any alleged "unfair" prejudicial effect was far outweighed by the letter's probative value as evidence that the Bank was offering pretextual reasons for what was in fact retaliation. "Evidence is not unfairly prejudicial to the extent that it serves the proper purpose for which it is potentially admissible." *United States v. Gilliam*, 994 F.2d 97, 104 (2d Cir.1993) (Walker, J., concurring) (citing *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir.1980)). The letter did not have " 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.' " *United States v. Brady*, 26 F.3d 282, 287 (2d Cir.1994) (quoting Advisory Committee Notes, Fed.R.Evid. 403). Because the Tipton letter was relevant and not unfairly prejudicial, the Court properly admitted it into evidence.

■ The Court also properly admitted evidence concerning the compensation of other employees because this evidence was relevant to the plaintiff's discrimination and retaliation claims. The defendant argues that insofar as this evidence supported the plaintiff's discrimination claim, the evidence should not have been admitted because the plaintiff failed to meet the threshold requirements for a pay disparity claim. The plaintiff correctly points out that the defendant is simply arguing that the pay disparity evidence should not have been admitted because the plaintiff's discrimination claim itself was frivolous. This was clearly not the case. Although the plaintiff did not ultimately prevail on her discrimination claim, there was evidence of pay disparity and intensely disputed evidence about whether the positions in question were comparable.

■ Even if the plaintiff had not presented a discrimination claim, evidence of the salaries of other Societe General employees was relevant to the plaintiff's retaliation claim. In order to prove retaliation, the plaintiff had to demonstrate that she had a good faith reason to believe that the defendant's employment practice violated the laws against gender discrimination. *See Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir.1993). Evidence of pay disparity was

relevant to the plaintiff's proof that she had a good-faith basis for believing that the defendant's compensation practices discriminated against her on the basis of her gender in violation of the law.

■ Finally, given that the jury found that the defendant had not in fact discriminated against the plaintiff, the defendant cannot in good faith argue that it was prejudiced by the admission of this evidence. The jury was able to weigh the testimony carefully and conclude that it did not adequately support the plaintiff's claim of discrimination. It would strain credulity to find that the defendant was prejudiced by the introduction of evidence the jury found insufficient to support the claim of discrimination.

■ Because the jury verdict in favor of the plaintiff on her retaliation claim was not "seriously erroneous" and was not based on evidence that was improperly admitted, the defendant's motion for a new trial with respect to the plaintiff's retaliation claim is denied.

### 3.

■ In the alternative, the defendant contends that it is entitled to a new trial on the plaintiff's back pay damages award. A jury's determination of damages must stand unless, after according substantial deference to the jury's findings of fact, the court concludes that the amount awarded " 'is so high as to shock the judicial conscience and constitute a denial of justice.' " *Blissett v. Coughlin,* 66 F.3d 531, 536 (2d Cir.1995) (quoting *Ismail v. Cohen,* 899 F.2d 183, 186 (2d Cir. 1990) (internal citations and quotations omitted)). "[A] reviewing court owes great deference to a jury in its performance of [the judicial rule of assessing damages]." *McIntosh v. Irving Trust Co.,* 887 F.Supp. 662, 664 (S.D.N.Y.1995); *see also Blissett,* 66 F.3d at 531 (factual findings of jury regarding damages must be accorded "considerable deference").

■ The plaintiff presented evidence at trial to support the full amount of $300,000 in back pay the jury awarded her. The plaintiff testified that, assuming an eight percent annual salary increase and an annual bonus of 22 percent of the prior year's base salary— the rates the defendant had determined were applicable to her during her employment— she would have received $291,743 in compensation for the period January 29, 1993 through May 26, 1995. The defendant did not present any alternative calculations on back pay damages for the jury to consider but only argued that the plaintiff should not have received back pay during the period she was enrolled in school. Given the evidence presented at trial, it is clear that the jury's award of $300,000 does not shock the judicial conscience and constitute a denial of justice. Instead, the back pay award reveals that the jury found that the defendant had failed to meet its burden of proof to demonstrate that the plaintiff did not fulfill her duty to mitigate, and that the jury accepted as true the back pay calculations the plaintiff offered at trial, which the jury was certainly entitled to do based on the evidence. Accordingly, the defendant's motion for a new trial with respect to the plaintiff's back pay damages award is denied.

### II.

The defendant's third motion is for its attorneys' fees and costs. The defendant argues that because the plaintiff did not prevail on her discrimination claim, the defendant is entitled to its reasonable attorneys' fees and costs of $83,745.75 expended in defending against this claim pursuant to Fed. R.Civ.P. 54(d) and 42 U.S.C. § 2000e–5(k).

■ For a defendant in a Title VII case to recover fees as a prevailing party, it must demonstrate that the claim on which it prevailed was "frivolous, unreasonable, or groundless, or ... that the plaintiff continued to litigate after it clearly became so." *Rounseville v. Zahl,* 13 F.3d 625, 632 (2d Cir.1994) (internal quotations omitted); *see Hensley v. Eckerhart,* 461 U.S. 424, 429 n. 2, 103 S.Ct. 1933, 1937 n. 2, 76 L.Ed.2d 40 (1983) ("A prevailing defendant may recover an attorney's fee [under 42 U.S.C. § 1988] only where the suit was vexatious, frivolous, or brought to harass or embarrass the defendant."). The defendant contends that it is entitled to a portion of its attorneys' fees and costs because the plaintiff's discrimination

claim was frivolous, unreasonable, and groundless.

As discussed above and in the Court's prior opinion in this case, the plaintiff introduced sufficient evidence at trial to permit the jury to decide that the defendant had discriminated against her on the basis of her gender. Indeed, this Court so found when it denied the defendant's motion for a directed verdict at the end of the plaintiff's case-in-chief and again at the close of the trial. The plaintiff introduced evidence that she was paid less than two male vice presidents who were in the same (or lower) cluster as the plaintiff and that the cluster system was designed to ensure that jobs with like responsibilities were paid comparably. In support of her position, the plaintiff also introduced evidence of the Bank's organizational structure as well as anecdotal evidence about problems with women at the Bank. In addition, the plaintiff introduced substantial evidence about her accomplishments and about certain problems reflected in the evaluations of the males to whom she compared herself.

■■ Although the Bank introduced evidence to support its argument that the positions to which the plaintiff compared her job were not comparable, the evidence certainly created a jury question that the jury resolved in the Bank's favor. The plaintiff's position that she was the victim of discrimination was a good-faith claim and by no means frivolous, groundless, or unreasonable so as to justify an award of attorneys' fees and costs to the defendant. Accordingly, the defendant's motion for attorneys' fees and costs is denied.

### III.

The final motion before the Court is the plaintiff's motion for attorneys' fees and costs pursuant to 42 U.S.C. § 2000e–5(k) as the prevailing party in a Title VII action. The plaintiff seeks attorneys' fees and costs incurred during three phases of the litigation: the pretrial phase, the trial phase, and the posttrial phase.[2] The defendant contends that the plaintiff is not entitled to receive

compensation for work that was needless, excessive, redundant, or insufficiently documented, that the plaintiff's requested attorneys' fees should be reduced by 50 percent to reflect her limited success at trial, and that the plaintiff is not entitled to nonstatutory costs such as transportation, computerized legal research, and clerical overtime.

### A.

■■ In a Title VII action, "the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs." 42 U.S.C. § 2000e–5(k); *see Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir.1992), *cert. denied. sub nom. Bethlehem Steel Corp. v. Grant*, 506 U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993) (granting attorneys' fees in Title VII action). This provision is to be construed in the same fashion as all other "prevailing party" fee provisions in other federal laws. *City of Burlington v. Dague*, 505 U.S. 557, 562, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992); *Hensley*, 461 U.S. at 433 n. 7, ("standards set forth in this opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party'"); *Lyte v. Sara Lee Corp.*, 950 F.2d 101, 103 (2d Cir.1991) (awarding fees in a Title VII case). The defendant does not dispute that the plaintiff is a prevailing party with respect to her retaliation claim and entitled to reimbursement for those fees and costs reasonably expended litigating this claim; however, the defendant contends that the plaintiff should not be compensated for allegedly excessive and unnecessary expenditures of legal time and for fees expended on her unsuccessful discrimination claim.

■■ In order to determine what constitute "reasonable" attorneys' fees, the starting point is the "lodestar amount," which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate for attorneys and paralegals. *City of Burlington*, 505 U.S. at 559, 112 S.Ct. at 2639; *Grant*, 973 F.2d at 99. The fee

---

**2.** The fees and costs requested for the posttrial phase reflect expenses incurred in connection with plaintiff's responses to the defendant's posttrial motions, the plaintiff's filing of her motion

for fees and the preparation and filing of her reply to .the defendant's opposition to that motion, and the plaintiff's preparation for oral argument.

applicant bears the burden of submitting contemporaneous time records that support the hours worked and rates claimed. *New York State Ass'n. for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147 (2d Cir.1983). There is a "strong presumption" that the lodestar is reasonable. *City of Burlington,* 505 U.S. at 557, 112 S.Ct. at 2638; *Lunday v. Albany,* 42 F.3d 131, 134 (2d Cir.1994). The party that asks the court to depart from the lodestar amount bears the burden of proving that such a departure is necessary to the calculation of a reasonable fee. *Grant,* 973 F.2d at 101.

Here, the plaintiff requests $275 per hour for Laura S. Schnell, a partner in the Vladeck law firm; $175 per hour for Margaret L. Watson, who served as co-counsel at the trial of this action; $175 per hour for other associates who worked on this case; and $65 per hour for law clerks and paralegals. The plaintiff's attorney swore in her affidavit supporting the fee application that the requested fees were comparable to the prevailing rates for lawyers, paralegals, and law clerks of reasonably comparable skill, experience, and reputation. (Second Schnell Aff. ¶ 29.) The defendant does not question the reasonableness of the hourly rates the plaintiff has requested, and these rates are supported by the record.

The defendant does challenge, however, the number of hours billed by the plaintiff's attorneys and paralegals. The plaintiff claims that she has made a "good faith effort to exclude from her fee request hours that are excessive, redundant, or otherwise unnecessary," as *Hensley v. Eckerhart,* 461 U.S. at 434, 103 S.Ct. at 1940, requires. The plaintiff has excluded from her request for attorneys' fees and costs numerous items where lawyers or paralegals spent time familiarizing themselves with the case, reviewing billing, and preparing the damages chart for the plaintiff's unsuccessful claim for discrimination. (Schnell Reply Aff. ¶¶ 3, 4, 5, and 34.)

After taking these deductions, the plaintiff's requested attorneys' fees are $195,977.50: $172,137.50 for attorneys' fees incurred during the pretrial and trial phases of the litigation, (Second Schnell Aff. ¶ 38), and $23,840.00 for attorneys' fees incurred during the posttrial phase of the litigation, (Schnell Supp.Aff. ¶ 10).

■ In arguing for the exclusion of certain hours, the defendant first alleges that the plaintiff's lawyers spent an "excessive amount of time on this action" because the case was "substantively straightforward and procedurally routine" and "did not involve novel legal issues or complicated facts." Def.'s Mem. in Opp. to Plaintiff's Application for Attorneys' Fees and Costs at 11–12. ("Def.'s Mem."). Although the case was not particularly complex, "the fact that a case is straightforward is not grounds to reduce a lodestar award." *DiFilippo v. Morizio,* 759 F.2d 231, 235 (2d Cir.1985). Having reviewed the lawyers' work on this case and the efficient way in which the case was handled, the Court finds that it is simply incorrect to argue that the amount of time was excessive.

The defendant next argues that it was unnecessary for the plaintiff to have two attorneys present at trial as well as a paralegal, and that two associates needlessly attended mediation sessions, court conferences, witness interviews, and depositions that Ms. Schnell conducted.

■ The defendant's argument that it was unnecessary for the plaintiff to have two attorneys and a paralegal present at trial is unpersuasive. In *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir.1983), the Court of Appeals for the Second Circuit held that "prevailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist." *Id.* at 1146. The use of a second attorney "may be essential for planning strategy, eliciting testimony or evaluating facts or law." *Williamsburg Fair Housing Comm. v. Ross–Rodney Housing Corp.,* 599 F.Supp. 509, 518 (S.D.N.Y.1984). Here, the plaintiff's attorney Ms. Schnell swore by affidavit that "[i]t was essential to have another attorney present at trial to help formulate cross examination questions, locate documents for cross examination, address evidentiary issues, and formulate strategy." (Schnell Reply Aff. ¶ 3.) This claim seems

entirely reasonable, especially given that the defendant called 17 witnesses at trial and the plaintiff had only deposed three of them prior to trial, an efficient use of discovery, which certainly reduced the legal expenses for that stage of the litigation. The defendant's objection is also undermined by the fact that it also had two attorneys at trial: Governor Tipton, the General Counsel for Societe General, assisted at trial and attended all sidebars and Court conferences during the trial. *See Bridges v. Eastman Kodak Co.*, No. 91–7985, 1996 WL 47304, at *5 (S.D.N.Y. Feb. 6, 1996) (Carter, J.) (awarding fees for more than one attorney present at trial, noting that "[a]ttorneys seldom try cases alone; counsel for defendants certainly did not").

■ The plaintiff's use of a paralegal during parts of the trial was equally reasonable. According to Ms. Schnell's affidavit, the paralegal not only brought research and other needed material to court, but also took notes during important parts of the trial so that the attorneys would have an accurate record on which to base questions at trial and closing arguments. (Schnell Reply Aff. ¶ 5.) In addition, the paralegal fees of $1,430 that the plaintiff seeks is substantially less than the cost of a daily transcript of the trial, which the defendant obtained for $5,597. (Kalish Aff. ¶ 15.)

The defendant's argument that the plaintiff should not recover the fees requested for the time Mr. Hernstadt, an associate, spent preparing and attending an interview is well-founded; however, this argument is moot because the plaintiff has withdrawn her application with respect to the 2.75 hours Mr. Hernstadt spent in connection with this interview. (Schnell Reply Aff. ¶ 4.)

■ The defendant also contends that the plaintiff should not recover attorneys' fees for those hours of work that were not documented with sufficient particularity. In order for a party to recover attorneys' fees, it is necessary that the party submit time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc.*, 711 F.2d at 1148; *see also F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir.1987). The defendant objects to Ms. Schnell's time entries listed as "telephone call," "consultation," and "review of documents," (Second Schnell Aff., Exh. A at 1); 41.5 hours of Ms. Schnell's time and 10 hours of Ms. Watson's time as "trial preparation," (Second Schnell Aff., Exh. A at 4, 12); and the time entries of other associates and law clerks labeled "research," "cite checking," and "file checking," (Second Schnell Aff., Exh. A at 20–22), as insufficiently particular.

■ The Court agrees that the entries listed simply as "telephone call," "consultation," and "review of documents" are not sufficiently specific so as to enable the Court to determine whether the hours billed were duplicative or excessive. *See Pressman v. Estate of Steinvorth*, 886 F.Supp. 365, 367 (S.D.N.Y.1995) (holding that plaintiff is not entitled to reimbursement for work described in invoices only as "telephone conversation," "prepare correspondence," or "review of file"). Moreover, given the arguments that the plaintiff's attorneys spent time on an unsuccessful claim, these records do not adequately support plaintiff's claims for fees for this time. Accordingly, 4.25 hours of Ms. Schnell's time is deducted from the plaintiff's fee request.

■ The Court rejects, however, the defendant's other challenges to the plaintiff's attorneys' time entries. The defendant's attack on the plaintiff's attorneys' entries labeled "trial preparation" are not persuasive. The Court was able to observe first-hand the intense trial efforts expended by all counsel that required not only time in court but preparation. During the course of the trial the Court asked both parties to provide briefs on various legal issues as they arose, and the parties provided such briefs promptly. In addition, it is entirely reasonable that the attorneys and their staff spent hours each night preparing for trial the following day. Although the law clerks' time entries listed as "research," "cite checking," and "file checking" do not themselves indicate what issues were being researched and what documents were being cite checked, it is clear from the time entries as a whole that the work documented in these entries was per-

formed in connection with the preparation of the joint pretrial order and with the trial itself. *See Bridges,* 1996 WL 47304, at *5 (refusing to reduce fee request for lack of specificity because overall the plaintiff's time records "afford[ed] the court sufficient opportunities to evaluate the reasonableness of each task and the time expended on it").

■ The defendant's objection to compensation for obtaining and reviewing the transcript in an unrelated case, *Neuschatz v. Societe Generale, Jacques Bouhet and Kevin Hughes,* Index. No. 13412/91 (N.Y.Co.Civ.Ct. 1991), is not well-founded. In *Neuschatz,* Mr. Hughes was named as a defendant in a sex discrimination action that alleged that he had retaliated against the plaintiff in that case for her complaints of sexual harassment. Because Mr. Hughes's credibility was critical to the plaintiff's retaliation claim in this case, his testimony in a prior retaliation action was highly relevant to this case. Accordingly, it was reasonable for the plaintiff's attorneys' to spend time obtaining and reviewing the transcript of *Neuschatz* for possible cross-examination in this case.

■ In summary, the Court recognizes that before submitting her fee request, the plaintiff reduced the amount of her request for attorneys' fees and costs considerably. The defendant does not dispute that the plaintiff's counsel actually worked the hours for which compensation is sought, nor does it dispute the reasonableness of the rates charged. This case entailed extensive document discovery, several depositions, and extensive briefing both before and during the trial. Because the plaintiff's attorneys effectively and efficiently tried this case, the defendant's objections concerning the calculation of the lodestar are rejected, with the exception of 4.25 hours of Ms. Schnell's time as indicated above. The lodestar is thus $170,487.50, and is based on the following figures:

| | Hours | Rate | Total |
|---|---|---|---|
| Laura Schnell | 264.75 | $ 275 | $ 72,806.25 |
| Margaret Watson | 386.75 | 175 | 67,681.25 |
| Edward Hernstadt | 74.75 | 175 | 13,081.25 |
| Anne L. Clark | 9.00 | 175 | 1,575.00 |
| John Beranbaum | 2.25 | 175 | 393.75 |
| Law Clerks | 85.00 | 65 | 5,525.00 |
| Paralegals | 145.00 | 65 | 9,425.00 |
| TOTAL FEES: | | | $170,487.50 |

(Second Schnell Aff. ¶ 37.)

■ Having calculated the lodestar, the next step is to consider whether it is appropriate to depart from the lodestar to reflect the plaintiff's partial success at trial. The defendant argues that the Court should reduce the plaintiff's attorneys' fee award by 50% to account for the plaintiff's limited success at trial. Although the plaintiff recognizes that she failed to prevail on her discrimination claim, she has excluded from her fee request only the eight hours of associate time and two hours of paralegal time spent preparing the damages chart marked as Exhibit 41 for identification at trial. (Second Schnell Aff. ¶ 34.)

■ When a plaintiff does not prevail on all her claims, the Court must engage in a two-step inquiry to determine whether a departure from the lodestar is necessary. First, the Court must determine "whether the plaintiff failed to succeed on any claims wholly unrelated to the claims on which the plaintiff succeeded." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940; *Grant,* 973 F.2d at 101. If so, any hours spent on the unrelated unsuccessful claim should be subtracted from the lodestar. *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940; *Grant,* 973 F.2d at 101. Second, the Court must consider whether the plaintiff was unsuccessful on claims interrelated with the successful claims such that the plaintiff's claims arose out of a common core of facts or involved related legal theories. *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940; *Grant,* 973 F.2d at 101. If this is the case, "the court must determine whether the plaintiff's level of success warrants a reduction in the fee award." *Grant,* 973 F.2d at 101. If a plaintiff has obtained "excellent results," the fee award "should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940; *Grant,* 973 F.2d at 101. Attorneys' fees cannot be awarded according to the proportion between damages sought and damages actually recovered. *Grant,* 973 F.2d at 102. However, "where the plaintiff achieved only

limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley,* 461 U.S. at 440, 103 S.Ct. at 1943; *Grant,* 973 F.2d at 101. The Supreme Court has emphasized that the degree of the plaintiff's overall success is " 'the most critical factor' " in determining the reasonableness of a fee award. *Farrar v. Hobby,* 506 U.S. 103, 113, 113 S.Ct. 566, 574, 121 L.Ed.2d 494 (1992) (quoting *Hensley,* 461 U.S. at 436, 103 S.Ct. at 1941). Thus, to determine whether a downward adjustment of the lodestar is appropriate, the Court must compare "the relief sought and the relief granted by the court." *United States Football League v. National Football League,* 887 F.2d 408, 414 (2d Cir.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990); *see also Farrar,* 506 U.S. at 115, 113 S.Ct. at 575 (stating that this inquiry is the "primary consideration" when awarding fees).

In this case, the plaintiff prevailed on her retaliation claim but did not succeed on her discrimination claim. The defendant alleges that the plaintiff's retaliation and discrimination claims were unrelated because they arose from distinct legal theories and stemmed from distinct factual circumstances, and that had the plaintiff only presented her retaliation claim at trial, "both parties would have experienced substantial savings of time and expense." Def.'s Mem. at 8. In addition, the damages theories for the two claims were somewhat different. The plaintiff alleged that as a result of gender discrimination she was paid less than she otherwise would have earned during her employment at the Bank; in contrast, the plaintiff claimed that as a result of her retaliatory discharge she lost future earnings.

■ It is clear that the factual and legal underpinnings of the plaintiff's discrimination and retaliation claims were both factually and legally interrelated. The plaintiff's claims were based on a common core of facts, and the preponderance of the evidence the plaintiff introduced at trial applied to both claims. In particular, much of the evidence in this case related to the Amerifund transaction, which was used by the defendant both to explain why the plaintiff resigned and to

justify the defendant's failure to give the plaintiff a raise and a bonus. In addition, the legal issues at trial were substantially intertwined: the plaintiff had to demonstrate a good-faith belief that the Bank had discriminated against her at the time she engaged in an activity protected under Title VII in order to prevail on her retaliation claim. *Cosgrove,* 9 F.3d at 1039. Many courts in this District have found that discrimination and retaliation claims are factually and legally related for purposes of calculating attorneys' fees. *See, e.g., Dominic v. Consolidated Edison Co. of New York, Inc.,* 822 F.2d 1249, 1259 (2d Cir.1987) (upholding district court finding that the legal theories underlying discrimination and retaliation claims are "inextricably interwined"); *Altman v. Port Authority of New York and New Jersey,* 879 F.Supp. 345, 354 (S.D.N.Y.1995) (stating that much of the evidence for both claims was intertwined and the evidence relating solely to the discrimination claim was "essential to show a reasonable basis for the complaints of age discrimination"); *Malarkey v. Texaco, Inc.,* 794 F.Supp. 1237, 1246 (S.D.N.Y.1992), *aff'd,* 983 F.2d 1204 (noting that proof of the same events was necessary to establish both discrimination and retaliation claims); *Caruso v. Peat, Marwick, Mitchell & Co.,* 779 F.Supp. 332, 334–35 (S.D.N.Y.1991) (finding that the plaintiff's discrimination and retaliation claims were legally and factually intertwined and thus not "distinct in all respects"); *Dallessandro v. Monk,* No. 85–8880, 1989 WL 97840, at *4 (S.D.N.Y. Aug. 15, 1989) (holding that the plaintiff's discrimination and retaliation claims "arose from a common core of facts and involve related legal theories").

■ Because the plaintiff's successful and unsuccessful claims are related, the Court must consider whether the plaintiff's limited success warrants a departure from the lodestar amount. Under *Hensley,* a reduction is appropriate when the lodestar amount is excessive given the plaintiff's degree of success: "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940; *see also Texas State Teachers Ass'n. v. Garland Indep.*

*School District,* 489 U.S. 782, 790, 109 S.Ct. 1486, 1492, 103 L.Ed.2d 866 (1989) ("the degree of the plaintiff's success is relation to the other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee").

Here, the plaintiff clearly obtained only limited success at trial. Not only did the plaintiff fail to prevail on a significant and distinct claim, but she also failed to recover a substantial part of the relief she sought. The plaintiff sought dramatically different damages for her retaliation and discrimination claims, in contrast to similar cases where plaintiffs demanded the same relief for both claims or recovered a substantial percentage of the relief they had requested. *See, e.g., Grant,* 973 F.2d at 101 (upholding district court's refusal to reduce the lodestar to account for limited success because plaintiffs settled their case for "more than [they] could ever have recovered had they won all their claims at trial"); *Dominic,* 822 F.2d at 1259–1260 (plaintiff "recovered the same relief on the retaliation claim that he would have on his discrimination claim"); *Malarkey,* 794 F.Supp. at 1246 (partially successful plaintiff recovered "about as much as she could have hoped for"). Here, the plaintiff sought as damages for her discrimination claim a significant sum representing the additional amount of money she would have been paid during her employment at the Bank had she been compensated the same as allegedly similarly situated men. The plaintiff compared her salary to that of three other Bank employees and calculated the pay differential as $478,640 with respect to Mr. Mejean, $349,000 with respect to Mr. Dalle–Molle, and $299,000 with respect to Mr. Cervone. At trial, however, the jury found that the Bank had not discriminated against the plaintiff and awarded her only the back pay compensation she sought as damages for her retaliation claim. This back pay award consisted solely of the amount of money she would have earned between the time she left the Bank and the trial had she not been wrongfully discharged. Thus, the plaintiff sought to recover substantial additional damages for discrimination, but failed to obtain any relief on this theory.

In addition, although the plaintiff's discrimination and retaliation claims were legally and factually related, the plaintiff's attorneys spent some time on the discrimination claim that they would not have expended had the plaintiff only argued a claim of retaliation. This unnecessary time included the legal briefing, discovery, and trial time devoted to the issue of discrimination as well as some of the examination of witnesses on the issue of comparable salaries.

■ In sum, a modest reduction in the lodestar amount is appropriate given the plaintiff's lack of success on an important claim. The amount of the attorneys' fees should reflect that the plaintiff obtained significant success on her retaliation claim but should be reduced to take into account the fact that the plaintiff obtained no success on her discrimination claim, and that this lack of success resulted in a significantly lower recovery. The plaintiff's voluntary reduction to account for her lack of success—the time spent preparing the damages chart—is insignificant, especially when viewed in comparison with the voluntary reductions plaintiffs have made under similar circumstances. *See, e.g., Altman,* 879 F.Supp. at 354 (plaintiff who prevailed on retaliation claim but failed on discrimination claim eliminated from his fee request 119 hours of lead attorney's time and 20 hours of associate time spent solely on unsuccessful discrimination claim); *Caruso,* 779 F.Supp. at 335 (plaintiff voluntarily reduced lodestar amount by ten percent because he succeeded on retaliation claim but not on discrimination claim).

■ Because the plaintiff's retaliation and discrimination claims were factually and legally intertwined, it is virtually impossible to deduct from the lodestar a specific number of billed hours that represents work done on the plaintiff's unsuccessful discrimination claim. When a reduction in the fee award is appropriate, the court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley,* 461 U.S. at 436–37, 103 S.Ct. at 1941–42; *see United States Football League,* 887 F.2d at 414 (affirming district court's decision to reduce fee request by 20 percent to reflect the plaintiff's

limited success at trial); *Krauth v. Executive Telecard, Ltd.*, No. 95–3967, 1996 WL 29420, *18 (S.D.N.Y. Jan. 24, 1996) (reducing fee request in proxy case by 50 percent to account for plaintiffs' limited success); *Ragin v. Harry Macklowe Real Estate Co.*, 870 F.Supp. 510, 523 (S.D.N.Y.1994) (reducing lodestar by 50 percent to reflect plaintiff's partial success at trial); *Myree v. Local 41, Int'l. Brotherhood of Elec. Workers*, 847 F.Supp. 1059, 1069 (W.D.N.Y.), *aff'd.*, 29 F.3d 620 (1994) (declining to reduce billing entries relating to liability but reducing billing entries attributable to issues of damages by 75% in light of plaintiff's limited success). In this case, it is reasonable to make a ten percent reduction of the lodestar to reflect the plaintiff's lack of success on a related but significant claim. This reduction leaves a reasonable fee that compensates the plaintiff for the attorneys' fees reasonably expended on the successful pursuit of her retaliation claim. Accordingly, the plaintiff is awarded $153,438.75 for her attorneys' fees, which is 90 percent of the lodestar amount.

## B.

The plaintiff is also entitled to costs under Fed.R.Civ.P. 54(d) and 28 U.S.C. § 1920, as well as "those reasonable out-of-pocket expenses incurred by the attorney[s] and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987). The plaintiff has submitted a bill of costs and additional out-of-pocket expenses with her petition for attorneys' fees. The plaintiff had applied for reimbursement of the following expenses:

| | |
|---|---:|
| District Court filing fee | $ 120.00 |
| Transcripts | 4,773.60 |
| Transportation | 961.11 |
| LEXIS | 676.94 |
| Clerical overtime | 1,296.80 |
| Binding | 31.00 |
| Messenger service | 403.25 |
| Facsimile | 62.00 |
| Federal Express | 259.75 |
| Oversized postage | 56.20 |
| Photocopying | 4,071.00 |
| Miscellaneous | 473.96 |
| TOTAL: | $13,149.61 |

(Second Schnell Aff. ¶ 39.)

The defendant argues that the plaintiff is not entitled to reimbursement for costs and out-of-pocket expenses that are not explicitly authorized by 28 U.S.C. § 1920, which describes the costs that may be awarded to the prevailing party in most civil suits. *See* Fed. R.Civ.P. 54(d). In particular, the defendant contends that the plaintiff should not be reimbursed for money spent on clerical overtime, computer-assisted research, messenger services, fax service, overnight express service, oversize postage fees, meals, transportation home from the office after late night and weekend work, and the trial transcript of an unrelated case.

In her affidavit, Ms. Schnell stated that all of the costs and disbursements set forth in the application for costs are routinely billed by the Vladeck firm to its clients. (Schnell Reply Aff. ¶ 7.) The costs the plaintiff's attorneys claim here are not excessive and do not include any unnecessary items. In addition, the defendant has not provided any evidence contradicting Ms. Schnell's sworn affidavit that the Vladeck firm normally charges these costs to its clients. *See Pastre v. Weber*, 800 F.Supp. 1120, 1127 (S.D.N.Y.1991) (rejecting defendant's argument that some of the plaintiff's requested costs were part of the overhead of the plaintiff's attorneys because defendant failed to present any evidence to the contrary). Having carefully reviewed the plaintiff's request for disbursements, the Court finds them reasonable. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.1994) (upholding award of costs in § 1983 action for service of summons and complaint, postage, copying costs, hotel bills, meals, and messenger service, among other things); *Peterson v. Foote*, No. 83–153, 1995 WL 118173, at *8 (N.D.N.Y. Mar. 13, 1995) (permitting reimbursement for LEXIS research); *Tennes v. Commonwealth of Mass., Dep't. of Revenue*, 745 F.Supp. 1352, 1363 (N.D.Ill.1990), *aff'd.*, 944 F.2d 372 (7th Cir.1991) (ADEA case awarding costs for special process services, deposition transcripts, photocopying expenses, and pretrial computerized legal research); *Pastre*, 800 F.Supp. at 1123, 1127 (awarding costs and disbursements for photocopies, transcripts, computer database legal research, messenger services, contract printing, binding, postage,

travel, meals, and telephone calls). Accordingly, the defendant is ordered to reimburse the plaintiff's attorneys for the full amount of costs the plaintiff seeks in the amount of $13,149.61.

■ The plaintiff is also entitled to attorneys' fees and costs incurred in connection with the motions considered in this foregoing opinion. The defendant has not challenged the plaintiff's request for $23,840.00 in attorneys' fees, (Schnell Supp.Aff. ¶ 10), and $2,475.09 for costs incurred during the post-trial phase of the litigation, (Schnell Supp. Aff. ¶ 12). Because the fees and costs the plaintiff requests are reasonable, the plaintiff is entitled to be reimbursed for them in full, for a total of $26,315.09.

To summarize, the plaintiff's motion for attorneys' fees and costs is granted in the following amounts:

Attorneys' Fees

| | |
|---|---|
| Pretrial and Trial Phases | $ 153,438.75 |
| Posttrial Phase | 23,840.00 |

Costs

| | |
|---|---|
| Pretrial and Trial Phases | 13,149.61 |
| Posttrial Phase | 2,475.09 |
| TOTAL | $ 192,903.45 |

## CONCLUSION

For the reasons stated above, the defendant's motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) and a new trial pursuant to Fed.R.Civ.P. 59(a) is DENIED; the defendant's motion for attorneys' fees and costs is DENIED; and the plaintiff's application for attorneys' fees and costs is GRANTED in part in the sum of $192,-903.45.

**SO ORDERED.**