**Mary WILLIAMS, Plaintiff,**

v.

**SECRETARY OF the NAVY, Defendant.**

**No. 93 CV 0676.**

United States District Court, E.D. New York.

May 10, 1994.

Valerie A. Voorhees, New York City, for plaintiff.

Zachary W. Carter, U.S. Atty., E.D.N.Y., Brooklyn, NY (Thomas A. McFarland, of counsel), for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff, Mary Williams, brought this suit under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Civil Rights Act of 1991, Pub.Law 102–166; the Equal Access to Justice Act, 28 U.S.C. § 2412; and the Back Pay Act, 5 U.S.C. § 5596, against defendant, the Secretary of the Navy, for a determination of the amount of attorneys' fees and back pay to which she is entitled after a settlement of her employment discrimination claim. The court has jurisdiction under 42 U.S.C. § 2000e–16, providing for civil actions pursuant to Title VII, and 28 U.S.C. § 1331.

### I

The undisputed facts are as follows.

Plaintiff, a black woman, was an employee of the Navy Exchange Service Command (Navy Exchange) for 21 years. Throughout her career she has never received an evaluation below "good." In April 1990 she was made supervisor of the Navy Lodge Reservation in Lakehurst, New Jersey. In the fall of that year she asked an employee under her supervision to co-sign a personal loan from a financing company. After several requests the employee did so.

In December of the next year plaintiff defaulted on the loan. Eventually the financing company sued the co-signing employee for collection. That employee told a friend in the Navy Exchange about it. That person told others, who in turn told a commander. The commander interviewed the co-signing employee, met with plaintiff, and determined that plaintiff should be subject to an emergency suspension without pay and termination.

In April 1992 plaintiff was terminated for "unacceptable supervisory conduct." Plaintiff, who had considered the co-signer a friend, felt the punishment too severe. She had never received training as a supervisor and believed that to be a contributing factor in her errant behavior.

In accordance with the procedures established by the Secretary of the Navy, plaintiff was entitled to bring an Adverse Action Appeal to challenge procedural irregularities in her termination. She filed a timely notice of such an appeal. She also filed with the Equal Employment Opportunity (EEO) Office an informal discrimination complaint, alleging discrimination based on race, color and sex. She repaid the co-signing employee the amount of the loan and legal fees.

On receipt of the notice of appeal, the Navy Exchange advised plaintiff's attorney that plaintiff "must choose either the administrative appeals procedure or the EEO procedures, but she cannot pursue her appeal via both avenues." Letter from John J. Lyons, Manager, Labor/Employee Relations Branch, to Valerie A. Voorhees, dated May 6, 1992. This limitation was based on Office of Civilian Personnel Management Instruction 12713.2, which provides, at paragraph 14(a):

> If an allegation of discrimination is raised by a covered employee at any stage of the administrative grievance procedure, the deciding official will inform the grievant in writing that introduction of the allegation will serve to terminate processing of the matter under the Department of the Navy Grievance System, CPI 771.

Although she protested that this bifurcation of the appeals process was improper, plaintiff's attorney eventually decided to go ahead with the Adverse Action Appeal and then to bring a formal EEO complaint.

While preparing for the Adverse Action Appeal she called an EEO officer to tell him of strong evidence of discrimination and to recommend a speedy settlement. He responded that he could do nothing unless there was evidence "in the record." *Declaration II of Valerie A. Voorhees in Support of Plaintiff's Motion for Attorneys' Fees* at 3–4.

Plaintiff therefore included discrimination evidence in the Adverse Action Appeal in order to get it "into the record as soon as possible." *Id.* She did so knowing that evidence of discrimination would technically be deemed irrelevant to the appeal. In his report and recommendation recommending that plaintiff be reinstated, the hearing officer found the evidence of discrimination irrelevant, but he referred to it and considered

some of the allegations serious enough to recommend that defendant investigate them.

The hearing officer's recommendation that plaintiff be reinstated, with a formal letter of counselling and a ten-day suspension without pay, was accompanied by a recommendation that supervisors sign statements saying they had read certain guidelines and receive training prior to being made supervisors.

While awaiting the hearing officer's report, plaintiff filed a formal EEO complaint saying that during her employment she was treated unfairly based on her race and sex and that she was terminated due to her race and sex. An EEO officer accepted for investigation plaintiff's discrimination claims as to disparate training and guidance and the like, but refused to hear charges of disparate treatment in her discharge on the ground that she had brought the Adverse Action Appeal. Plaintiff appealed to the EEOC from the EEO officer's refusal to hear her charges of discrimination in her discharge.

While the EEOC appeal was underway and while defendant was considering the recommendation of the Adverse Action Appeal officer, the parties engaged in settlement discussions. Finally plaintiff and defendant entered into a settlement agreement. Plaintiff's emergency suspension and termination were rescinded. She was instead suspended for thirty days and downgraded to a management trainee position, with pay equal to her prior salary. She was given back pay for all time except the thirty-day suspension period. Plaintiff in turn dismissed her EEO appeal.

The settlement agreement left two issues unresolved, (1) the amount of plaintiff's attorneys' fees and (2) the propriety of a deduction of plaintiff's unemployment insurance from her back pay award. Those issues are now before the court.

## II

### Attorneys' Fees

■ Title VII permits an award of attorneys' fees. 42 U.S.C. § 2000e–5(k). That section provides, in pertinent part:

In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

Under this section, a prevailing party may recover fees for administrative proceedings pursuant to Title VII. *See New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 61, 100 S.Ct. 2024, 2029, 64 L.Ed.2d 723 (1980). Defendant disputes the number of plaintiff's attorney's hours that were part of "proceedings" pursuant Title VII and the hourly rate at which those hours should be compensated. Defendant argues that plaintiff is entitled to no more than $23,997.00 in attorneys' fees and costs, less $5,000.00 paid on signing the settlement agreement.

### A. *Compensable Hours*

■ Defendant contends that the Adverse Action Appeal was not a proceeding "to which the complainant was referred pursuant to the provisions of Title VII," *id.* at 71, 100 S.Ct. at 2034, and thus time spent uniquely on that administrative appeal should not be compensated.

■ The court will not grant attorneys' fees for administrative proceedings that were not necessary to the prosecution of the Title VII claims. *Cf. Lenihan v. City of New York,* 640 F.Supp. 822, 830–31 (S.D.N.Y.1986) (medical board proceedings not required for Title VII or 42 U.S.C. § 1983 claims). But to the extent plaintiff's attorney reasonably and necessarily spent time on the Adverse Action Appeal before plaintiff's Title VII case could be settled, the court will grant an award of fees.

The Navy Exchange's refusal to consider in one proceeding appeals of termination that raise claims of both procedural irregularities and discrimination would appear unfairly to prejudice the employee.

Plaintiff here was not successful in raising all her claims in one proceeding. Yet the two claims were interrelated. The manner in which the Navy Exchange applied its procedural rules plainly was relevant to a discrimination claim. She was then precluded before the EEO officer from raising the claim that

her termination was a violation of Title VII. She was prevented from raising Title VII matters in the Adverse Action Appeal even though all government agencies are responsible "to assure nondiscrimination in employment" as required by the Constitution and statutes. ' 42 U.S.C. § 2000e–16(e). She was appealing this preclusion of issues to the EEOC when the parties settled.

Perhaps plaintiff could have refused to settle her case in order to have the EEOC rule on the Navy Exchange's policy. But the court cannot condemn her for achieving a positive result in her case. It remains for this court to determine what part, if any, of the services rendered in the Adverse Action Appeal was so related to plaintiff's Title VII proceedings as to be properly considered for the purposes of attorneys' fees.

Plaintiff's allegations of discrimination on the record in the Adverse Action Appeal contributed to the strength of plaintiff's settlement position, as did the finding of procedural irregularities by the hearing officer. She had already shown improper treatment. It only remained to show discriminatory animus.

As a practical matter the Adverse Action Appeal was inseparable from the Title VII proceedings. Some portion of counsel's services in that appeal constituted "work that was both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement," *Webb v. Board of Educ.*, 471 U.S. 234, 243, 105 S.Ct. 1923, 1928–29, 85 L.Ed.2d 233 (1985), and thus should be considered in determining attorney's fees.

But to the extent the services in the Adverse Action Appeal were about procedural problems alone and arguably unrelated to discrimination, the court will not award fees. The court finds that 10% of the time devoted "solely" to the Adverse Action Appeal was both useful and necessary to achieve the settlement of plaintiff's Title VII claims.

Defendant calculated from plaintiff's attorney Valerie Voorhees' time sheets the hours she spent on the Adverse Action Appeal alone, the hours she spent on both the Adverse Action and the EEO appeals, and the hours she spent on the EEO proceedings alone. The court will use that breakdown with the following adjustments: (1) all time spent solely on settlement, namely the hours in December and January, will be considered 100% compensable; and (2) the documented hours submitted by plaintiff since the defendant made its calculations, or 34.25 hours, will be added as compensable.

With these changes the court finds that plaintiff's attorney spent 124.45 hours solely on settlement and EEO-related proceedings, 41.35 hours on both the Adverse Action and the EEO appeals, and 53.95 hours on the Adverse Action Appeal alone. The court will count 50% of the mixed hours as attributable to the EEO proceedings and compensable. Of the other 50% of the mixed hours and of the 100% Adverse Action Appeal hours, the court will count 10% of that total as necessary to the Title VII claims and compensable. Thus:

settlement and EEO hours:

$124.45 \times 1.00 = 124.45$ compensable hours

mixed, attribute to EEO:

$41.35 \times .50 = 20.68$ compensable hours

mixed, attribute to Adverse Action and weight 10%:

$41.35 \times .50 \times .10 = 2.07$ compensable hours

solely Adverse Action, weight 10%:

$53.95 \times .10 = 5.40$ compensable hours

total compensable hours:

$124.45 + 20.68 + 2.07 + 5.40 = 152.60$ compensable hours

The total of Ms. Voorhees' compensable time is 152.60 hours. Defendant does not dispute the 11.15 hours of Ms. Voorhees' associate Sherri L. Martin, nor does it dispute the $212.75 in costs submitted by plaintiff.

### B. *Hourly Rate*

■ Plaintiff claims hourly rates of $325 for attorney Voorhees time and $125 for that of attorney Martin. Defendant challenges the $325 an hour rate.

Plaintiff submits documentation tending to show that since graduating from law school almost 21 years ago Ms. Voorhees has be-

come a recognized expert in and leading practitioner of public sector labor law. She also submits declarations showing that $325 an hour is within the range of fees charged by employment lawyers with experience similar to hers. Other declarations show that as of 1990, firms such as Paul, Weiss, Rifkind, Wharton & Garrison billed at rates of up to $425 an hour.

Defendant argues that because plaintiff was obligated to pay only $220 an hour for Ms. Voorhees' time, the court should use that rate. In the alternative, defendant notes that in *Eidlen v. Community Sch. Bd. District 8,* No. 92 Civ. 8041, 1993 WL 328839 (S.D.N.Y.1993) (McKenna, J.), and in *David v. Sullivan,* 777 F.Supp. 212 (E.D.N.Y.1991) (Weinstein, J.), the courts held $250 an hour to be acceptable maximum rates.

In *Eidlen* the court noted that $325 an hour would be a reasonable fee for some hours, but it reduced the average rate to $250 an hour because some work could have been performed by an associate. Here plaintiff's attorney appears to have performed her job with efficiency, and much of the work involved communications and negotiations properly attended to by a senior attorney.

In *David v. Sullivan,* the court found that a $250 an hour was an appropriate maximum rate for senior litigators in civil rights cases. 777 F.Supp. at 222 (report and recommendation adopted by the court) (citing *Huntington Branch NAACP v. Town of Huntington,* 749 F.Supp. 62 (E.D.N.Y.1990) (surveying attorney's fee cases)).

Although Ms. Voorhees is an expert in her field, it is not appropriate to determine her hourly rate by comparison to large law firms. Although some Paul, Weiss partners may bill at over $400 an hour, that figure is misleading because of the high expenses associated with maintaining large offices. *See, e.g., Burr v. Sobol,* 748 F.Supp. 97, 101–02 (S.D.N.Y.1990) (rejecting comparison to Cravath, Swaine & Moore and finding requested $225 an hour "wholly justified" for director of New York Lawyers for the Public Interest).

■ But there is also no reason to limit Ms. Voorhees' fee to the $220 an hour agreed upon with her client. She says that she charges clients on a sliding scale from $0 to $325 an hour depending on their ability to pay. The appropriate measure is the market rate for her services by clients who can afford them, not her client's perceived ability to pay. Otherwise *pro bono* attorneys could never recover fees. *See Wilder v. Bernstein,* 725 F.Supp. 1324, 1334 (S.D.N.Y.1989), *aff'd in part, remanded,* 965 F.2d 1196 (2d Cir.), *cert. denied sub nom. Administrator, New York City Dept. of Human Resources v. Abbott House,* —— U.S. ——, 113 S.Ct. 410, 121 L.Ed.2d 335 (1992).

Considering Ms. Voorhees' experience, the quality of her work in this case, and the relevant market rates for public interest attorneys, the court finds that $275 an hour is an appropriate rate for her services. The rate of $125 an hour for Ms. Martin also is reasonable and uncontested. Defendant will pay attorneys' fees and costs of:

|   | | | |
|---|---|---|---|
| | $275/hour × 152.60 hours | = | $41,965.00 |
| + | $125/hour × 11.15 hours | = | 1,393.75 |
| + | | costs = | 212.75 |
| − | | previously paid = | 5,000.00 |

|   |   |
|---|---|
| | $38,571.50 |

### III

*Back Pay Award*

■ Pursuant to Title VII a court may award back pay as part of damages for an unlawful termination. 42 U.S.C. § 2000e–5(g). That section says, in pertinent part, "Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." The parties have cross-moved for summary judgment as to whether defendant properly deducted plaintiff's unemployment insurance payments from her award of back pay.

■ Unemployment contributions are not "earnings" for purposes of the section. But the court may deduct them from a back pay award as a matter of equity. *See EEOC v. Enterprise Ass'n Steamfitters Local No. 638,* 542 F.2d 579, 591 (2d Cir.1976), *cert. denied,* 430 U.S. 911, 97 S.Ct. 1186, 51 L.Ed.2d 588 (1977). The Court of Appeals for the Second Circuit has not decided whether unemployment compensation "should automatically be

deducted from an award of lost wages." *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 258 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 939, 117 L.Ed.2d 110 (1992).

In that case the court noted in *dicta* that pension payments are appropriately set off from back pay awards because they are paid directly by the employer. *Id.* (citing *Hagelthorn v. Kennecott Corp.*, 710 F.2d 76 (2d Cir.1983)). But unemployment insurance, coming from a collateral source (a public agency), should not serve to reduce a culpable employer's liability. *Id.*

Prior to *Promisel* the Second Circuit rule gave district courts discretion as to whether to set off unemployment compensation from back pay awards. *Steamfitters, supra,* 542 F.2d at 591–92. Most other circuits have held that unemployment insurance should not be deducted from back pay awards because of the collateral source rule. *See Gaworski v. ITT Commercial Fin. Corp.*, 17 F.3d 1104, 1112–13 (8th Cir.1994) (comparing circuits positions and adopting majority rule that benefits should not be deducted from back pay awards).

The chief rationale behind these cases is the collateral source rule, declining to use funds obtained from a source unconnected with the culpable party to reduce that party's liability. *See, e.g., Texport Oil Co. v. M/V Amolyntos*, 816 F.Supp. 825, 843 (E.D.N.Y.), *aff'd in part, rev'd in part,* 11 F.3d 361 (2d Cir.1993). That rule is not appropriate here. Pursuant to 5 U.S.C. § 8509 the Navy Exchange reimburses the Federal Employees Compensation Account in an amount equal to unemployment compensation paid to its employees. The source of federal employees' unemployment compensation is not collateral, but effectively is the federal employer. Defendant properly withheld from plaintiff's back pay the amount of her unemployment compensation.

## IV

Plaintiff's motion for attorneys' fees and costs is granted in the amount of $38,571.50. Plaintiff's motion for summary judgment regarding her back pay award is denied. Defendant's motion for summary judgment on the back pay award is granted.

So ordered.