Inez **NEMBHARD**, Plaintiff,

v.

**MEMORIAL SLOAN–KETTERING CANCER CENTER,**
Defendants.

No. 94 Civ. 8914 (DC).

United States District Court,
S.D. New York.

March 11, 1996.

Finder and Cuomo, L.L.P. by Patrick W. McGinley, New York City, for Plaintiff.

Proskauer, Rose, Goetz & Mendelsohn, L.L.P. by Myron D. Rumeld, Aliza Herzberg, New York City, for Defendant.

### MEMORANDUM DECISION

CHIN, District Judge.

On February 16, 1996, following a three-day trial in this employment case, the jury returned a verdict in favor of plaintiff Inez Nembhard against defendant Memorial Sloan–Kettering Cancer Center ("Memorial") on her claim of age discrimination. The jury awarded Ms. Nembhard back pay in the amount of $110,000 and found that Memorial acted willfully. The jury awarded no damages, however, for front pay and pain and suffering, and it also found in favor of Memorial with respect to plaintiff's claim of race discrimination.

Before the Court are Memorial's motion for judgment as a matter of law or, alternatively, for a new trial and plaintiff's motion for attorneys' fees and costs. For the reasons that follow, Memorial's motion is denied and plaintiff's motion is granted to the extent set forth below.

1. In summarizing the facts, I have viewed the evidence in a light most favorable to plaintiff and granted her every reasonable inference that the jury might have drawn in her favor.

### Statement of the Case

#### A. Summary of the Facts [1]

Ms. Nembhard, an African–American woman, was employed in the payroll department of Memorial from June 1975 until she was discharged on January 11, 1993. Throughout her career at Memorial, she received favorable performance evaluations and her work was generally well regarded. At the time of her discharge, she was a Payroll Supervisor and was 41 years old.

In December 1992, Ms. Nembhard went on vacation to Antigua. She was scheduled to return to New York City on Sunday, January 3, 1993 and was expected back at work the next day, Monday, January 4th. Because of difficulties with her flight, however, she was unable to return to New York on January 3d. She called her supervisor, Shelley Pope, and left a message on Pope's answering machine to the effect that her flight was overbooked, that she was still in Antigua, and that she was trying to get out as soon as she could. (Tr. 89).[2]

Plaintiff was unable, however, to get a return flight on either Monday or Tuesday. Her mother called Memorial both days to explain that plaintiff was still unable to return. Ms. Nembhard finally returned to New York Wednesday night. On Thursday, however, she was unable to go to work; she called Ms. Pope in the morning and explained that she was sick, but that she would try to make it to work the next day. (Tr. 93).

On Thursday afternoon, two police officers knocked on the door to Ms. Nembhard's home. She was advised that her friend, Charles Ephraim, had passed out in the street outside. She went to him and accompanied him to the hospital, where she remained with him until approximately 2 a.m. Friday. (Tr. 94–95). She then went home. When she awoke later that Friday morning, she still felt sick. She called her office, spoke to a co-worker, and explained that she was "still feeling sick, and [had been] at the

2. References to "Tr." are to the trial transcript.

hospital all night with Charles because he collapsed in the street." (Tr. 95). She did not go to work. She called the hospital, however, to check on Ephraim, and when she was told that they did not know who he was, she went to the hospital again, found Ephraim, and stayed with him until Friday afternoon.

On Monday, January 11, 1993, Ms. Nembhard returned to work. When she asked her co-workers if there had been any problems while she was away for the holidays, "everyone said no." (Tr. 97). At noon, she was summoned to a meeting with Ms. Pope and Mark Svenningson, who was the Comptroller and Pope's immediate supervisor. Mr. Svenningson told plaintiff that Memorial had lost confidence in her ability to do the job because they did not believe her "story about coming back from Antigua." (Tr. 98–99; see also PX 6). Ms. Nembhard was offered a severance package to resign. She refused to resign, however, and accordingly she was discharged.

Plaintiff was eventually replaced by someone who was 40 years old. At the time plaintiff was discharged, Ms. Pope was 32 years old.

### B. Other Evidence of Age Discrimination

At trial, plaintiff also presented the following evidence of age discrimination:

Ms. Nembhard testified that on at least three separate occasions Ms. Pope referred to her as an "old black fly" that Pope said "she had been trying to get rid of for awhile now." (Tr. 65; see also Tr. 68, 70, 151). The first of these statements was made in June or July 1992, the second in August 1992, and the third in September 1992. (Tr. 65, 67–68, 68–70).

Ms. Nembhard also testified that on another occasion in June or July 1992, in a conversation about accumulating sick time, Ms. Pope said that "only old people like [plaintiff]" were allowed by Memorial to accumulate certain sick time. (Tr. 67; see Tr. 65–66).

Ms. Nembhard further testified that in November 1992, she had a conversation with Ms. Pope about Mark Svenningson's desire to hire a computer expert to perform certain work in the payroll department. Nembhard told Pope that she was willing to be trained, but Pope told her "no," explaining that "Mark was looking for younger people, young blood in the department to take care of that type of duty." (Tr. 79–80). Similarly, in the fall of 1991, Ms. Pope cancelled certain computer training that Ms. Nembhard had wanted because Ms. Nembhard "didn't need it" and so that "other younger people [could] be trained." (Tr. 61).

In plaintiff's 1992 performance evaluation, Ms. Pope wrote that plaintiff was "a good source of historical information." (Tr. 46).

Plaintiff also testified that starting in 1992 there was a change in Ms. Pope's attitude toward her. (Tr. 63). Plaintiff testified that on several occasions Pope made statements or took actions suggesting that plaintiff would not be around the next year. (Tr. 64–66).

Plaintiff also testified that three other employees in the payroll department had come back late from vacations without being disciplined. (Tr. 104–06).

### C. Prior Proceedings

The complaint in this case was filed on December 9, 1994. Plaintiff alleged that she was unlawfully discriminated against on the basis of her age and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., the Civil Rights Act of 1991, 42 U.S.C. § 1981, and the New York State Human Rights Law, N.Y.Exec.Law § 290 et seq. (McKinney 1993 & Supp.1995).

Trial commenced on February 13, 1996, and the jury returned its verdict on February 16, 1996 in favor of plaintiff on her age discrimination claim and in favor of Memorial on the race discrimination claim.

These motions followed.

### Discussion

### A. Memorial's Motion

#### 1. The Applicable Legal Standards

A jury verdict is not to be set aside and judgment entered as a matter of law

pursuant to Fed.R.Civ.P. 50(b) unless " 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [jurors] could have reached.'" *Samuels v. Air Transport Local 504*, 992 F.2d 12, 14 (2d Cir.1993) (*quoting Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir.1970)). In considering a Rule 50(b) motion, "a trial court must view the evidence in a light most favorable to the non-movant and grant that party every reasonable inference that the jury might have drawn in its favor." *Samuels*, 992 F.2d at 16. Judgment as a matter of law is to be entered only where there is such a "complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture." *Mattivi v. South African Marine Corp.*, 618 F.2d 163, 168 (2d Cir.1980); *accord Logan v. Bennington College Corp.*, 72 F.3d 1017, 1022 (2d Cir.1995); *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1154 (2d Cir.1994).

 A motion for a new trial pursuant to Fed.R.Civ.P. 59 may not be granted on the basis of the weight of the evidence unless the jury's verdict is "seriously erroneous." *Binder v. Long Island Lighting Co.*, 57 F.3d 193, 202 (2d Cir.1995); *accord Piesco v. Koch*, 12 F.3d 332, 344–45 (2d Cir.1993). A trial court may refrain from setting aside a verdict and ordering a new trial "[w]here the resolution of the issues depended on assessment of the credibility of the witnesses." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir.1992), *cert. denied*, 508 U.S. 952, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993).

Memorial argues that the evidence presented at trial was insufficient, as a matter of law, to sustain the jury's finding that age was a determinative factor in Memorial's decision to discharge plaintiff. Indeed, Memorial contends that it presented "overwhelming evidence" at trial that Ms. Nembhard was discharged "because—and only because—of her failure to return from vacation." (Def.Mem. at 14).[3] Moreover, Memorial argues that the

fact that plaintiff was replaced by an employee who was 40 years old, and only one year younger than plaintiff, shows that its decision to fire plaintiff was not motivated by age. Finally, Memorial argues that there was insufficient evidence in the record to support the jury's finding of willfulness.

### 2. *The Evidence of Age Discrimination*

 Although I might very well have reached a different result had I been the finder of fact, viewing the evidence in the light most favorable to plaintiff, granting her every reasonable inference that the jury might have drawn in her favor, and without weighing the credibility of the witnesses or considering the weight of the evidence, I find that there was sufficient evidence to sustain the jury's conclusion that Memorial fired plaintiff at least in part because of her age.

The evidence of age discrimination included the following:

#### a) *Pretext*

The jury could have found that Memorial's articulated reason for discharging plaintiff was pretextual. Plaintiff presented evidence that other employees had come back late from vacations without being disciplined and that no serious problems were caused by her absence. (Tr. 97, 104–06, 321–23). *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282–83, 96 S.Ct. 2574, 2579–80, 49 L.Ed.2d 493 (1976) (evidence that an employee was punished more severely than others for similar infractions or deficiencies constituted evidence of pretext). Moreover, plaintiff presented evidence that as early as 1992 Ms. Pope expressed a desire to get rid of her. Hence, the jury could have reasonably concluded that Memorial seized on her late return from vacation to implement Pope's desire. This evidence of pretext is itself some evidence of discrimination. As the Second Circuit has held, "[a] showing that a proffered justification is pretextual is itself sufficient to support an inference that the employer intentionally discriminated."

**3.** References to "Def.Mem." are to defendant's memorandum of law in support of its motion for judgment as a matter of law or alternatively for a

new trial. References to "Def. Fees Mem." are to defendant's memorandum in response to plaintiff's fee application.

*Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989).

### b) *Disproportionate Punishment*

The jury could have concluded that Memorial acted disproportionately by dismissing an employee who had performed well for more than 17 years for returning late from vacation for reasons beyond her control, who could not then immediately return to work because of illness, who gave notice that she would be late in returning, and whose lateness in returning did not cause Memorial any significant problems. Indeed, Memorial essentially made the decision to fire plaintiff on Friday, January 8, 1993, shortly after plaintiff had called the office and reported that she was "still feeling sick, and [had been] at the hospital all night with Charles because he collapsed in the street." (Tr. 95). The jury could have reasonably concluded that Memorial's decision to discharge plaintiff in these circumstances rather than simply dock her salary or charge her vacation time or reprimand her was discriminatorily motivated.

### c) *Overt Statements*

Finally, plaintiff testified that her supervisor made several overtly discriminatory statements. I must assume at this juncture, of course, that the jury accepted this testimony. On the basis of these statements, taken together with the other evidence of discrimination, the jury's finding of age discrimination must be sustained.

Memorial's argument that the statements are mere "stray remarks" is unconvincing. The statements were not "distant in time," as Memorial contends. Indeed, plaintiff testified that the comment about "younger people, young blood" was made in November 1992, just two months before plaintiff was fired. (Tr. 79–80). Moreover, there was testimony that at least five statements about age were made by plaintiff's supervisor in the summer and fall of 1992, and there were two more statements made prior to that time. Hence, the comments were neither stray nor distant in time.

### 3. *Willfulness*

■ Memorial's contention that the evidence does not support the finding of will-

fulness must also be rejected. Ms. Pope testified that as manager of the payroll department she was aware of the laws forbidding discrimination on the basis of age and race. (Tr. 313). On the day that plaintiff was asked for a resignation, she was presented with a proposed release that referenced the employment discrimination laws. (Tr. 101–02). Hence, the jury could have reasonably concluded that Memorial knew that discrimination on the basis of age was unlawful. In addition, on the basis of the evidence reviewed above, the jury could have reasonably concluded that Memorial acted deliberately, intentionally, and knowingly.

■ Memorial also contends that there was no evidence presented to show that Svenningson and Sullivan, who were involved in the decision to dismiss plaintiff, acted knowingly. That contention, however, is wrong as a factual matter at least as to Mr. Svenningson. Plaintiff testified that Ms. Pope told her that "*Mark* was looking for younger people, young blood in the department to take care of that type of duty." (Tr. 79–80). The reference to Mark, of course, was to Mr. Svenningson, who testified that he "would have had to make [the] final decision" to dismiss plaintiff. (Tr. 366). Hence, there was evidence in the record to show that Mr. Svenningson acted willfully as well.

### 4. *The One–Year Age Disparity*

■ Memorial argues that the jury could not have reasonably found that its decision was motivated by age because there was only a one-year age differential between plaintiff and her replacement. This argument certainly gives me pause. *See, e.g., Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1087–88 (3d Cir.1992) (holding that one-year age differential was insufficient to establish *prima facie* case of age discrimination, where uncontroverted evidence also showed that three younger employees were discharged along with plaintiff); *Pace v. Southern Railway System,* 701 F.2d 1383, 1390 (11th Cir.), *cert. denied,* 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983) (holding that a two-year age differential was insufficient to establish a *prima facie* case of age discrimination, in

absence of direct proof of discriminatory intent or statistical evidence showing pattern of discrimination); *Estepa v. Shad,* 652 F.Supp. 567, 571–72 (E.D.N.Y.1987) (holding that plaintiff could not establish a *prima facie* case of age discrimination where there was only a six-year age differential between plaintiff and the person who received the promotion for which plaintiff had unsuccessfully applied). Ultimately, however, the one-year differential does not preclude a finding of age discrimination, in view of the evidence in the record of discriminatory intent.

 As the Third Circuit has held, there is "no magical formula" for determining whether a "particular age gap" is sufficient to support an inference of age discrimination. *Barber v. CSX Dist. Servs.,* 68 F.3d 694, 699 (3d Cir.1995). Likewise, the Ninth Circuit has observed that "replacement by even an older employee will not necessarily foreclose prima facie proof if other direct or circumstantial evidence supports an inference of discrimination." *Douglas v. Anderson,* 656 F.2d 528, 533 (9th Cir.1981). *Accord Pace,* 701 F.2d at 1390 ("We make no ruling as to whether in another case where, in addition to a two year age differential there is statistical proof of a pattern of discrimination or direct proof of discriminatory intent, a prima facie case may be established."). In the present case, there *was* direct proof of discriminatory intent—the overtly age-based comments. Moreover, although the replacement was only a year younger than plaintiff, he was a transfer from the general accounting department who was brought in only after other efforts were made to find someone. (Tr. 310). Finally, because the replacement's duties were somewhat different from plaintiff's (Tr. 324), the jury could have reasonably concluded that the circumstances were somewhat different.

Memorial's motion is denied.

## B. *Nembhard's Motion*

 The usual method for determining the amount of fees to be awarded a prevailing plaintiff in a civil rights case is to start by computing the "lodestar," *i.e.,* the number of hours reasonably expended multiplied by a reasonable hourly rate, and then to make any appropriate adjustments. *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 944, 103 L.Ed.2d 67 (1989); *Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983); *Cowan v. Prudential Ins. Co.,* 935 F.2d 522, 524 (2d Cir.1991).

Ms. Nembhard seeks fees for the work of her attorneys, Finder and Cuomo, LLP, as follows:

| | Hours | Hourly Rate | | |
|---|---|---|---|---|
| Patrick W. McGinley | 348.40 | × | $ 300 | = $104,520.00 |
| Matthew A. Cuomo | 22.20 | × | 150 | = 3,330.00 |
| Rocco A. Marciano | 53.55 | × | 95 | = 5,087.25 |
| H. Lester Cuddihy | 10.20 | × | 95 | = 969.00 |
| | | | Total | $113,906.25 |

Plaintiff also seeks reimbursement for costs of $6,880.64.

Memorial opposes the fee application as excessive, attacking both the proposed hourly rates as well as the number of hours for which compensation has been sought.

### 1. *The Hourly Rates*

 Memorial argues that the hourly rate of $300 proposed for plaintiff's lead attorney, Patrick W. McGinley, Esq., is excessive, citing in comparison my former partner Judith P. Vladeck, Esq. (*See* Def. Fees Mem. at 2). As Memorial notes, in *Pierce v. F.R. Tripler & Co.,* 770 F.Supp. 118 (S.D.N.Y. 1991), *aff'd in part, rev'd in part on other grounds,* 955 F.2d 820 (2d Cir.1992), the Court calculated fees at the rate of $300 per hour for Mrs. Vladeck, whom the Court described as " 'an exceptional attorney ... widely recognized as an expert in the field of employment discrimination.' " (Def. Fees Mem. at 2) (*quoting Pierce,* 770 F.Supp. at 121). Memorial argues that because Mr. McGinley purportedly only has "moderate" experience in employment law, "[h]e certainly cannot be equated in expertise with Judith Vladeck, the only attorney in the ... cases [cited by Memorial] awarded as much as $300 per hour for her time." (Def. Fees Mem. at 4).

Although I agree completely with Memorial's implicit suggestion that Mrs. Vladeck is without peer, Memorial's efforts to use her to reduce Mr. McGinley's hourly rate must be rejected. First, at $300 per hour, Mrs. Vla-

deck was grossly underpaid, even in 1991. Second, Mrs. Vladeck's firm was awarded fees in 1993 based on rates of $400 per hour for her and from $250 to $300 per hour for her less senior partners.[4] Third, in recent years rates have increased generally for practitioners in this area of the law.[5] Hence, the fact that Mrs. Vladeck was awarded an hourly rate of $300 in 1991 certainly does not preclude use of an hourly rate of $300 for Mr. McGinley in 1996.

Memorial also argues that Mr. McGinley's proposed rate of $300 per hour is excessive because he did not delegate any work to lower-billing associates but instead did virtually all of the work himself. Memorial argues that a "substantial reduction" in the rate charged for Mr. McGinley's work is required because much of the work that he performed could have been delegated to more . junior attorneys with lower billing rates. (Def. Fees Mem. at 4). The partner who handled the matter for Memorial notes that he expended only 220 hours on the litigation, while Mr. McGinley expended 348 hours. (Rumeld Aff. ¶ 3).

This argument is rejected. Although some of the work performed by Mr. McGinley could have been delegated to associates, I have no doubt that the associates would have been less efficient and taken more time. Indeed, although Memorial does not disclose the number of hours spent by the three associates who worked on the case, it does characterize the amount of time as "considerable." (Rumeld Aff. ¶ 3). Moreover, much of the work that Mr. McGinley did without the assistance of another attorney, such as taking depositions and attending trial, could have legitimately involved two attorneys. See, e.g., Dailey, 915 F.Supp. at 1327, (awarding fees for two attorneys and a paralegal in attendance at trial). Indeed, Memorial had two attorneys at trial and it concedes that it had both a partner and an associate attend depositions.

I find that the rate of $300 an hour requested by Mr. McGinley is more than reasonable. First, as he demonstrated in the present case, he is a superb trial lawyer. Second, notwithstanding Memorial's suggestions to the contrary, Mr. McGinley does have significant experience in employment law; indeed, he has represented that a "significant portion" of his practice over the last ten years has been devoted to labor and employment matters. I accept his representation. Third, Mr. McGinley has had extensive experience in other areas of the law; at various points in his 37-year career in the law he served as a Commissioner of the Department of Investigation of the City of New York, an Acting Justice of the Supreme Court of the State of New York, a Judge of the Criminal Court of the City of New York from 1979 to 1980, and an Assistant District Attorney in New York County.

Notwithstanding Mr. McGinley's credentials and abilities, Memorial inexplicably suggests that he be compensated at the rate of $150 per hour, which is even less than the $170 per hour that Memorial admittedly pays its own lawyers for *associate* time. (Rumeld Aff. ¶ 3). Needless to say, the suggestion is rejected; plaintiff will be awarded fees for

4. See Harris v. E.F. Hutton Group Inc., No. 88 Civ. 0172, 1993 WL 541661 (VLB) (KAR), Order & Final Judgment, dated December 29, 1993 (in employee stock plan class action, Magistrate Judge Roberts awarded the Vladeck firm $2.6 million in fees, calculated alternatively either as 15.8% of the total recovery or as the lodestar (based on rates for partners ranging from $250 to $400) times a multiplier of 1.85).

5. See, e.g., Dailey v. Societe Generale, 915 F.Supp. 1315, 1327 (S.D.N.Y.1996) (in Title VII case, hourly rate of $275 awarded to one of Mrs. Vladeck's partners who graduated from law school in 1983); Helbrans v. Coombe, 890 F.Supp. 227, 234–35 (S.D.N.Y.1995) (in Religious Freedom Restoration Act case, hourly rates awarded of $350 for experienced solo practitioner and for lawyers affiliated with 25–attorney New York City firm as follows: $300 for senior partners; $250 for junior partners; $225 for senior associates; $175 for mid-level associates; and $125 for junior associates); Ragin v. Harry Macklowe Real Estate Co., 870 F.Supp. 510, 518–19 (S.D.N.Y.1994) (in housing discrimination case, hourly rates awarded of $300 and $275 for lead counsel); Davis v. City of New Rochelle, 156 F.R.D. 549, 558 (S.D.N.Y.1994) (in voting rights case, hourly rate awarded of $300 for lead counsel); Williams v. Secretary of Navy, 853 F.Supp. 66, 71 (E.D.N.Y.1994) (in employment discrimination case, hourly rate awarded of $275 for partners).

Mr. McGinley's time at the rate of $300 per hour.

 Memorial contends that the requested rate of $95 per hour for the two paralegals is excessive. I agree. I will allow an hourly rate of $65 for the paralegals. *See Dailey,* 915 F.Supp. at 1327 (allowing $65 per hour for paralegals).

### 2. *The Number of Hours*

Memorial makes three objections that warrant modest reductions in the number of hours for which fees will be awarded.

First, Memorial seeks to eliminate 13.8 hours in time incurred in proceedings before the New York State Division of Human Rights prior to the addition of an age discrimination claim, on the basis that plaintiff failed on her race discrimination at trial. Although this is a fair objection, some of this time was undoubtedly necessary to the processing of the age discrimination claim as well. Consequently, I will eliminate 7 of the 13.8 hours.

Second, Memorial seeks to eliminate 45.15 hours and $4,575 in costs expended in connection with Dr. Benjamin Slome, plaintiff's expert who was never called to testify at trial. Although Dr. Slome apparently was available to testify, his testimony was obviated by a last-minute stipulation. Nonetheless, 45.15 hours does appear excessive, in view of the fact that Mr. McGinley only spent some 348 hours on the entire litigation. Accordingly, I will eliminate 25 of the 45.15 hours. I will allow, however, the costs of $4,575.

Third, Memorial seeks to eliminate some five hours expended in connection with certain factual allegations set forth in paragraphs 14 and 15 of the complaint that were not pursued. I agree that these five hours should be eliminated.

### 3. *Award of Fees and Costs*

Hence, I will award fees as follows:

| | Hours | | Hourly Rate | | |
|---|---|---|---|---|---|
| Patrick W. McGinley | 311.40 | × | $ 300 | = | $ 93,420.00 |
| Matthew A. Cuomo | 22.20 | × | 150 | = | 3,330.00 |
| Rocco A. Marciano | 53.55 | × | 65 | = | 3,480.75 |
| H. Lester Cuddihy | 10.20 | × | 65 | = | 663.00 |
| | | | Total | | $100,893.75 |

Plaintiff is also awarded costs and disbursements of $6,880.64.

### *Conclusion*

Memorial's motion for judgment as a matter of law or, alternatively, for a new trial, is denied. Plaintiff's motion for fees and costs is granted to the extent that she is awarded fees of $100,893.75 and costs of $6,880.64.

Judgment will be entered (i) awarding plaintiff $110,000 in back pay on her age discrimination claim, (ii) awarding plaintiff $110,000 in liquidated damages on her age discrimination claim, (iii) dismissing plaintiff's claim of race discrimination with prejudice, and (iv) awarding plaintiff and her attorneys fees of $100,893.75 and costs of $6,880.64.

SO ORDERED.