DENNY CHIN, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority’s holding that the district court properly granted summary judgment dismissing plaintiff-appellant Ya-Chen Chen’s Title VII discrimination claims. I respectfully dissent, however, from the majority’s ■ affirmance of the district court’s dismissal of Chen’s retaliation claims under Title VII and her claims for discrimination and retaliation under the New York City Human Rights Law (the “NYCHRL”). In my view, the record contains sufficient evidence to permit a reasonable jury to find that: 1) with respect to her Title VII claims, Chen was fired because of her complaints of discrimination; and 2) under the NYCHRL’s more lenient standard, Chen *78 was treated less well because of her race or gender and because of her complaints of discrimination.
Chen, an Asian woman, was employed as an Assistant Professor at the City College of New York (“CCNY”) starting in September 2007. She had generally positive reviews, was appointed Interim Director of the Asian Studies Program at the start of her second year, and was reappointed as a tenure-track Assistant Professor for the 2008-2009 and 2009-2010 academic years. Yet, after she complained about receiving too much attention from a fifty-four-year-old male student (the “Student”) and then complained of what she believed to be discrimination, she was dismissed as Interim Director of the Asian Studies Program, denied reappointment to a tenure-track professorship, and then fired. A reasonable jury could find that these adverse actions were retaliatory.
Accordingly, I would vacate the judgment of the district court with respect to Chen’s retaliation claims under Title VII and her retaliation and discrimination claims under the NYCHRL and remand for further proceedings.
I
Title VII provides that “[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.” 42 U.S.C. § 2000e-3(a). Such unlawful discrimination occurs where an employer takes an “adverse aetion[]” against an employee, meaning any action that “could well dissuade a reasonable worker from making or supporting a charge of discrimination.” Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). We have observed that such adverse actions often arise when “an employee whose primary claim of discrimination cannot survive pre-trial dispositive motions is able to take to trial the secondary claim that he or she was fired or adversely affected in retaliation for asserting the primary claim.” Quinn v. Green Tree Credit Corp., 159 F.3d 759, 762 (2d Cir.1998); see Alvarez v. City of New York, 31 F.Supp.2d 334, 344 (S.D.N.Y.1998) (“All too often ... employers react negatively to the assertion of a claim and' consequently turn a weak discrimination case into a strong retaliation case.”).
To prove retaliation, a plaintiff must show that 1) her employer discriminated or took an adverse employment action against her 2) “because” she opposed an unlawful employment practice. See 42 U.S.C. § 2000e-3(a). “Title VII retaliation claims must be proved according to traditional principles of but-for causation.... ” Univ. of Tex. Sw. Med. Ctr. v. Nassar, — U.S. -, 133 S.Ct. 2517, 2533, 186 L.Ed.2d 503 (2013). “ ‘[-B]ut-for’ causation does not[, however,] require proof that retaliation was the only cause of the employer’s action, but only that the adverse action would not have occurred in the absence of the retaliatory motive.” Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir.2013). Thus, there may be multiple but-for causes, and “[t]he determination of whether retaliation was a ‘but-for’ cause ... is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts, rather than a determination that there is no genuine dispute as to any material fact.” Id. at 846 n. 5.
In my view, the district court erred in granting summary judgment dismissing Chen’s Title VII retaliation claims for *79 three reasons: 1) the district court engaged in improper fact-finding; 2) there are genuine issues of material fact to be resolved by a jury; and 3) there is sufficient evidence in the record to permit a reasonable jury to find retaliation.
A
First, the district court erred by drawing factual conclusions at the summary judgment stage rather than simply determining whether genuine issues of material fact existed for trial.
The district court found that Chen failed to handle the incident involving the Student according to Lesen’s instructions, but the record contained conflicting evidence in this respect. Chen contends that Lesen instructed her to confront the Student and set up boundaries even though he was not then enrolled in her class, and that Lesen suggested that Chen do so immediately, that is, before the end of the semester. In contrast, Lesen denies that she suggested that Chen should interact with the Student before the end of the semester and contends specifically that she told Chen “not to deal with these behaviors before they actually occurred.” Ya-Chen Chen v. City Univ. of New York, No. 11 Civ. 0320(RA), 2014 WL 1285595, at *2 (S.D.N.Y. Mar. 31, 2014) (internal quotation marks omitted). Rather than viewing the record in the light most favorable to Chen, see Fabrikant v. French, 691 F.3d 193, 205 (2d Cir.2012), the district court stated that it “shares Defendants’ view” that Chen’s handling of the incident was “disturbing” and “inappropriate,” Chen, 2014 WL 1285595, at *8. Indeed, the district court resolved the factual dispute in favor of defendants, finding, for example, that “there is no evidence that Lesen instructed Chen to ... speak to the Student immediately,” id., when there was such evidence: Chen’s recollection of the meeting and Lesen’s e-mail following the meeting, which can be reasonably construed as contemplating immediate action, see id. at *2.
As the majority observes, the district court also found that “[defendants’ actions, contrary to constituting evidence of retaliation for Chen’s complaints, are entirely consistent as a progressive response to Chen’s ‘disturbing incident’ with the Student.” Id. at *11 (emphasis added); see Maj. Op. at 69. By finding these actions “entirely consistent” with the notion of progressive discipline, and by finding that non-retaliatory reasons existed for defendants’ decisions, the district court made a factual finding that should have been reserved for the jury. Of course, while the actions might have been “entirely consistent” with the concept of progressive discipline, they also could have been found by a reasonable jury to be retaliatory:
B
Second, genuine issues of fact remain that should be resolved by a jury.
First, many of the facts relating to the incident involving the Student are disputed. As discussed above, whether Chen handled the meeting with the Student in accordance with Lesen’s instructions is a factual question for the jury. Similarly, factual questions remain as to whether there was a sexual undertone to the incident and whether Chen described it as a sexual incident. Chen complained that the Student harassed her by blocking the doorway, spending long periods of time in her office hours, and would move closer and closer to her when speaking to her. Chen used words like “worried, afraid, strange,” when complaining about the incident and noted that a male colleague did not experience the same interactions with the Student. App. at 329.
*80 Second, factual questions remain regarding defendants’ treatment of Chen after the incident. Chen’s complaint alleges that Lesen “raised the volume of he voice and discriminated against me by requesting me to read the word, ‘stop,’ after her at least six to eight times as if I were only a child.” App. at 211. Chen alleged — and a reasonable jury could find — that this conduct was “racially and linguistically discriminatory” and made her feel like “a foreign fool or a kindergarten child.” App. at 213, 333. Chen also complained that her May 20, 2009 meeting with Calichman and Murphy was inappropriate, and testified that the meeting highlighted “very, very strong cultural differences.” App. at 525.
Third, a factual question exists as to whether the reappointment process was tainted. Calichman was present and voted at the October 15, 2009 executive committee meeting to reappoint professors. He had been named in Chen’s Affirmative Action complaint, and thus there is a question as to whether his involvement unduly influenced the decision.
These and other disputed factual questions are all relevant to a determination of whether retaliation was a cause of Chen’s adverse treatment, and accordingly should be considered by a jury.
C
Third, there is evidence in the record from which a reasonable jury could find retaliation, including the temporal proximity of events, Chen’s mostly positive evaluations, concerns about the reappointment process, the disproportionate nature of Chen’s punishment, and defendants’ shifting explanations for her dismissal.
First, the timeline of events supports the notion that defendants acted with a retaliatory motive. The incident occurred on May 13, 2009. Chen met with Calich-man and Murphy seven days later to discuss the incident. A mere eighteen days later, Calichman recommended that Chen be removed as Director of the Asian Studies Program, and she was replaced as Director. On August 25, 2009, Chen filed a complaint with CCNY’s Affirmative Action Office. Within two months of filing, on October 20, 2009, defendants voted not to reappoint Chen. On November 4, 2009, Chen filed a complaint with the New York State Division of Human Rights. Within a couple weeks, on November 19, 2009, Chen was notified that her position would be permanently terminated.
The majority contends that because Les-en, Calichman, and Murphy developed their “opinions about Chen’s conduct” before she filed her complaint with the Affirmative Action Office, “[n]o reasonable jury could conclude that their views of the situation were motivated by retaliatory animus.” Maj. Op. at 72. This reading of the facts, however, gives undue weight to defendants’ initial reactions to the incident, ignoring the escalation of both Chen’s complaints and defendants’ actions against her. While defendants removed Chen as Director of the Asian Studies Program before she filed with the Affirmative Action Office, this occurred after she had already complained to Calichman and Murphy about the incident. Further, the decision to not reappoint her came after the Affirmative Action Office filing. Accordingly, the timeline of events supports an inference that Chen was dismissed for complaining about the incident and then complaining of discrimination against her.
Second, Chen’s demonstrated history of positive performance evaluations supports an inference of retaliation. Chen’s June 2, 2008 evaluation recognized her strengths and noted that her overall relations with *81 others had improved. The evaluation noted: “Chen is an excellent teacher”; “[s]he also received a colleague evaluation of ‘Good’ and ‘Excellent’ and “Chen is a committed teacher and scholar.” App. at 185. The only negative comment in this review referenced “what some perceive as her overaggressiveness and lack of tact.” Id. Even the review Chen received after the incident highlighted her achievements, including that she received “two colleague evaluations of ‘Very Good’ and ‘Excellent,’ ” secured a book contract, wrote several articles, and delivered several conference presentations. Id. at 202. It also observed that her “productivity as a scholar is commendable,” and she provided valuable services to the Asian Studies Program. Id. Again, in her three years at CCNY, Chen was promoted to Interim Director of the Asian Studies Program and was twice reappointed to a tenure-track professorship. See Stratton v. Dep’t for the Aging for City of N. Y., 132 F.3d 869, 874, 879-81 (2d Cir.1997) (citing history of positive performance evaluations as supporting plaintiffs discrimination claims). Chen’s handling of the incident, even assuming she mishandled it, must be viewed in the context of her overall record.
Third, Chen presented evidence that Ca-lichman tainted the reappointment process, further supporting her retaliation claim. Calichman was aware that he was a subject of Chen’s Affirmative Action complaint and actively advocated against Chen and ultimately voted against her reappointment. Moreover, the other seven professors up for reappointment that year were reappointed unanimously. Yet Chen did not receive a single favorable vote: two members of the committee abstained and three voted against reappointment. A reasonable jury could infer an intent to punish.
Fourth, the disproportionate nature of Chen’s punishment supports a finding of retaliation. See Nembhard v. Mem’l Sloan-Kettering Cancer Ctr., 918 F.Supp. 784 (S.D.N.Y.1996), aff'd, 104 F.3d 353 (2d Cir.1996) (holding that harsh punishment coupled with positive employment record supports finding of pretext). Chen served as a tenure-track assistant professor from 2007 until 2010 and wag reappointed twice during that time. As recognized by Paas-well, Chen was generally well-regarded, her “productivity as a scholar ha[d] been ‘commendable,’ ” and she provided valuable service to the college, including serving on the Department Curriculum Committee, managing the Department website, offering two independent studies courses, and grading Chinese language placement exams. App. at 169. Paaswell also acknowledged that Chen had been “positively evaluated” by her peers and students. Id. Murphy echoed Paaswell’s recognition of Chen’s positive impact and even testified that he was surprised when Chen was removed as the Director of the Asian Studies Program. In light of this record, a reasonable jury could surely infer a retaliatory motive from the failure of defendants to impose a punishment less severe than termination.
Fifth, defendants’ shifting explanations for Chen’s termination support a finding of retaliation. See Zann Kwan, 737 F.3d at 849 (vacating grant of summary judgment dismissing retaliation claims where defendants provided shifting explanation for employee’s termination). Defendants now contend that they had legitimate reasons for dismissing Chen: “her longstanding inability to work in a collegial manner with other faculty members, and her inappropriate conduct with respect to [the Student].” Appellees’ Br. at 17. The district court likewise relied on “ample evidence that Chen’s reappointment had been called into question long before she filed” her *82 complaints. Chen, 2014 WL 1285595, at *11. Yet, in his letter advising Chen of her dismissal, Paaswell made no reference to collegiality problems. Instead, Paas-well’s letter relied only on Chen’s handling of the incident. Moreover, the record contains evidence that while some colleagues had complained about a lack of collegiality on the part of Chen, she was improving in this respect and, even after the incident, she received “two colleague evaluations of Wery Good’ and ‘Excellent.’ ” App. at 202. Hence, defendants have providing shifting explanations for Chen’s dismissal.
In any employment case, a plaintiff must take “the bits and pieces of available evidence” to create a “mosaic” of facts supporting her claim of discrimination or retaliation. See Gallagher v. Delaney, 139 F.3d 338, 342 (2d Cir.1998), abrogated, in part on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). A reasonable jury could agree with the district court’s assessment of the facts and find Chen’s mosaic insufficient to paint a retaliation claim. Taking all the pieces of evidence Chen has presented together, however, and viewing them in the light most favorable to her, a reasonable jury could also conclude that, with her generally positive record, she would not have been fired but-for her complaints about the incident. Accordingly, I would remand Chen’s Title VII retaliation claims for resolution by a jury.
II
I would also remand the case for the district court to properly address Chen’s NYCHRL claims. While the district court stated that the standard under New York City law is different from the standard under Title VII, it did not engage in a separate and independent analysis. I thus cannot conclude that the district court properly applied the NYCHRL. See Ve-lazco v. Columbus Citizens Found., 778 F.3d 409, 411 (2d Cir.2015) (per curiam) (vacating district court’s grant of summary judgment dismissing plaintiffs NYCHRL claims for failing to explain “with sufficient clarity” its reasons for dismissing the NYCHRL claims).
Claims under the NYCHRL must be analyzed “more liberally” than Title VII discrimination and retaliation claims. See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir.2009); Bermudez v. City of New York, 783 F.Supp.2d 560, 592 (S.D.N.Y.2011). Following the amendments to the NYCHRL in 2005, “courts must analyze NYCHRL claims separately and independently from any federal and state law claims” so “even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards.” Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir.2013). Under the NYCHRL, a plaintiff need only prove “by a preponderance of the evidence that she has been treated less well than other employees because of her gender [or other protected characteristic]. At the summary judgment stage, judgment should normally be denied to a defendant if there exist triable issues of fact as to whether such conduct occurred.” Williams v. N.Y.C. Hous. Auth., 61 A.D.3d 62, 872 N.Y.S.2d 27, 39 (1st Dep’t 2009).
The district court here dismissed Chen’s NYCHRL claims without referencing any of the relevant facts. For Chen’s discrimination claims, the district court held: “For the reasons described above [referencing the Title VII discussion], Chen has failed to put forth sufficient evidence to create a genuine issue of fact that discrimination played any role in Defendants’ actions.” Chen, 2014 WL 1285595, at *10. Similarly, for her retaliation claims, the district court held: “Chen’s alleged evidence of retalia *83 tion is insufficient to raise an issue of fact.” Id. at *12. The court failed to elaborate on these findings.
In my view, a reasonable jury could find, under the NYCHRL’s more lenient standard, that Chen suffered both discrimination and retaliation. Defendants’ disagreement with Chen about the nature of the incident and Lesen’s subsequent instructions, the temporal correlation between Chen’s complaints and termination, Chen’s pattern of positive evaluations until the incident, the tainted reappointment process, the disproportionate nature of Chen’s punishment, and defendants’ shifting explanations surrounding her termination all support her NYCHRL claims, and I would remand for the district court to analyze these claims under the proper standard.
For the reasons set forth above, I dissent from the majority’s disposition with respect to Chen’s Title VII retaliation claims and NYCHRL claims, and would instead vacate the judgment of the district court and remand the case for further adjudication.